OPINION
Defendant-appellant/cross-appellee Betty Moauro appeals from the October 21, 1998, November 19, 1998, January 19, 1999, October 22, 1999, and November 30, 1999, Judgment Entries of the Stark County Court of Common Pleas Domestic Relations Division. Plaintiff-appellee/cross-appellant is Joseph Moauro.
 STATEMENT OF THE FACTS AND CASE
On November 7, 1997, appellee Joseph Moauro filed a complaint for divorce against appellant Betty Moauro in the Stark County Court of Common Pleas, Domestic Relations Division. At the time the complaint was filed, the parties had five minor children, to-wit: Joseph T. Moauro, d.o.b. 8/17/93; Mary Katherine Moauro, d.o.b. 11/26/84; Matthew V. Moauro, d.o.b 10/22/87; Anna M. Moauro, d.o.b. 1/20/90; and Dominick Moauro, d.o.b. 3/11/91. A Uniform Child Custody Affidavit also was filed. Appellant Betty Moauro filed an answer and counterclaim on November 26, 1997. An answer to the counterclaim was filed by appellee on December 4, 1997. A Motion for Shared Parenting and proposed Shared Parenting Plan were filed by appellant with leave of court on September 28, 1998. Thereafter, a trial before Judge David E. Stucki was held on October 20, 1998. At the trial, the parties stipulated that the marital residence, which was valued at $48,000.00 and had a mortgage balance of $32,732.61, would go to appellee Joseph Moauro. The parties also stipulated that appellant would receive her 401K retirement savings plan, which was valued at $14,687.00, that each party would receive the vehicle titled in their respective names, and that specified personal property would go to appellant. The following evidence also was adduced at trial. Appellant and appellee were married in September of 1982 and, as stated above, five children were born as issue of such marriage. After appellant vacated the marital residence in August of 1997, the parties separated. The parties' five children remained in the marital residence with appellee. Appellee, as of the date of the trial, was employed part-time as a service attendant at a BP gas station while attending college part-time. Appellee, who was midway through his junior year at Kent State University, was working approximately 5 hours a week at the rate of $5.35 an hour. Appellee, who testified that he was earning $1,500.00 a year at BP, had earned $35,000.00 a year running a printing press before he started college. At trial, appellee testified that in addition to working and going to college, he took care of the parties' five children and shuttled them to and from school and extracurricular activities. At the time of the trial, appellant was employed as a registered nurse with Gastroenterology Specialists where she earned $37,000.00 in 1998. Previously, appellant had been employed as an assistant head nurse on the oncology floor at Aultman Hospital where, in 1997, she earned $42,238.03 a year. Appellant testified that she left her higher paying job at Aultman since such job was very stressful and entailed working long and unpredictable hours. Since she was required to work a lot of sixteen hours shifts while at Aultman, appellant was unable to spend much time with her children. In contrast, appellant testified that at her current job, she works from 8:00 a.m. to 5:00 p.m. and that such job provides her with the flexibility to pick up her children during such hours if necessary. According to appellant's testimony, appellee supported appellant's decision to change jobs. Both parties testified that during their marriage, they agreed that appellant would attend school while appellee worked full-time so that appellant could achieve her dream of becoming a nurse. In turn, once appellant received her degree, appellee would attend college to pursue his goal of becoming a teacher while appellant worked. Appellant received her nursing degree in 1994 by completing a four year nursing program in two and a half years. Once appellant commenced working as a registered nurse, appellee, in January of 1995, enrolled in college at Kent State University. Prior to trial, appellant had filed a proposed Shared Parenting Plan stating, in part, as follows: 1. PHYSICAL LIVING ARRANGEMENTS (a) Both parties shall hereafter have joint custody, care and control of the minor children, Joseph T. Moauro, Mary Katherine Moauro, Matthew V. Moauro, Anna M. Moauro, and Dominick A. Moauro, and shall have equal rights and responsibilities to the minor children and neither party's rights shall be superior. (b) The minor children shall make their principal residence with each parent on alternating months and each parent shall be the residential parent and legal custodian of said children when the children are in each parent's physical custody. (c) During the month that the children are not residing at the Mother's or Father's residence, each parent shall have companionship with the children as follows: (1) Every other weekend from 5:00 p.m. on Friday until Monday morning when the Parent takes the children to school. (2) On Tuesday and Thursday from 5:00 p.m. to 9:30 p.m. during the week following the Parent's weekend companionship. (3) On Monday and Wednesday from 5:00 p.m. to 9:30 p.m. during the week following the weekend that the Parent does not have weekend companionship. (d) The parties shall have physical custody of the children on holidays pursuant to the Stark County Standard Order of Companionship. (e) During the children's summer vacation from school, each Parent shall have the children in his or her physical custody for one continuous fourteen day period without interruption. (Emphasis added.)
Appellee, at the trial in this matter, submitted a Shared Parenting Plan providing, in part, as follows: A. Physical Living Arrangements The minor children shall live with the Father who will be designated the resideential [sic] parent and legal custodian of the minor children. The Mother will have compansionship [sic] with the children in accordance with Stark County Family Court Exhibit "A" attached hereto. In addition, on the weeks the Wife doesn't have weekend companionship, she shall have companionship each Monday and Wednesday from 5:00 P.M. to 8:00 P.M. The weeks the Wife does have weekend companionship, she shall have companionship each Tuesday and Thursday from 5:00 P.M. to 8:00 P.M. B. Vacations Each party shall be entitled to two (2) weeks vacations with the minor children. No vacation shall be taken during the Christmas and Spring break. Each parent will provide the other parent with the address and telephone number of the vacation site. Each party shall provide the other parent at least sixty (60) days notice of the dates for vacation. C. Holiday Schedule The holiday schedule shall be in accordance with the Stark County Family Court Companionship Schedule "A". The parties may wish to change a holiday under the plan agreement at least one (1) week in advance in order to observe family or religious traditions. If both parties do not consent to the proposed change,, [sic] the holiday plans will be according to the Schedule "A". (Emphasis added.)
At the October 20, 1998, trial, appellant testified that she was satisfied with the time division contained in appellee's proposed Shared Parenting Plan. However, appellant disputed appellee's designation as the sole residential parent and legal custodian of the parties' minor children. Rather, appellant indicated that she wanted the Shared Parenting Plan to state that whomever had custody of the children at a particular point in time was the residential parent. Both parties testified they were able to communicate with each other regularly with regards to the minor children and that the other was a good parent. The parties also agreed that, as of the time of the trial, they had been able to cooperate with each other on issues relating to the children. At the conclusion of the trial, the court granted the parties a divorce on grounds of incompatibility. Pursuant to a Judgment Entry filed on October 21, 1998, the trial court stated that the stipulations of the parties were approved and adopted "to be incorporated into the final decree" prepared and filed by appellee's counsel. The trial court, in such entry, also ordered as follows: "1. Def shall pay $250/month for 24 months as 
for Spousal Support subject to continuing jurisdiction and the standard conditions of death of either party, remarriage or living in a state of concubinage by obligee. At the end of this 24 month period, upon motion of either party, the court will review this order and adjust same as is then appropriate. 2. Plaintiff shall be the residential parent and the plan of parenting/companionship shall be as described on plaintiff's "shared parenting order" as filed. 3. Def shall pay CS as per the guidelines worksheet in Exhibit 5 giving plaintiff credit for the health insurance expense. 4. The parties shall equally pay the school tuition for the children. 5. Plaintiff shall pay and hold def harmless on his Discover card and the First of America card. The parties shall remain jointly liable for the Household Finance loan. Def shall pay and hold plaintiff harmless on the remaining debts listed in Exhibit 7. 6. Each party to pay their own fees and equally divide the court costs."
Both parties also were ordered to submit proposed findings of fact and conclusions of law to the trial court on or before November 10, 1998. Appellee filed his Findings of Fact and Conclusions of Law on November 4, 1998. On November 19, 1998, appellant filed a Notice of Appeal (Case No. 1998CA0312) from the trial court's October 21, 1998, Judgment Entry. After reviewing the proposed Findings of Fact and Conclusions of Law, the trial court, pursuant to a Judgment Entry filed on November 19, 1998, held as follows: "1)The court finds that Plaintiff is not voluntarily underemployed. Defendant shall pay child support in accord with the guideline support sheet (filed at the same time as this order) in the amount of $210.00 per month per child effective January 1, 1999 2) Due to substantial disparity in income and education of the parties, defendant shall pay to plaintiff the sum of $200.00 per month spousal support for 24 months effective January 1, 1999 3) Defendant will receive the tax exemption for the five minor children 4) Plaintiff will pay his Discover card in full, First America VISA in full, Beneficial loan in full, and Household Finance debt; defendant will pay her Discover card in full, Sears card, Montgomery Ward card, her student loan, and Ann Cherian loan 5) Plaintiff and defendant shall split the annual cost of parochial school tuition 6) The court retains jurisdiction over the child support and spousal support orders 7) Plaintiff's attorney to prepare final Judgment Entry for filing w/I 14 days of this order."
On December 15, 1998, appellant Betty Moauro filed a Notice of Appeal of the trial court's November 19, 1998, Judgment Entry (Case No. 1998CA00335). Thereafter, on December 17, 1998, appellant Betty Moauro filed Proposed Findings of Fact and Conclusions of Law. An agreed Judgment Entry/Decree of Divorce was filed on January 19, 1999. The trial court, in such entry, stated, in relevant part, as follows: "It is further ORDERED that the martial property shall be divided as follows: 1. The Court finds that the Plaintiff [appellee] is not voluntarily unemployed and that Defendant [appellant] shall pay child support in accordance with the guideline support worksheet attached hereto in the amount of Two Hundred Ten Dollars ($210.00) per month, per child effective January 1, 1999. 2. Due to substantial disparity in income and education of the parties, the Defendant shall pay to the Plaintiff the sum of Two Hundred Dollars ($200.00) per month spousal support for Twenty-four (24) months effective January 1, 1999. 3. The Defendant will receive the tax exemption for the five (5) minor children. 4. The Plaintiff will pay his Discover account in full, First American Visa in full, Beneficial Loan in full and Household Finance debt. 5. The Defendant will pay her Discover account in full, Sears, Montgomery Ward, her student loan and Ann Charion loan. 6. Plaintiff and Defendant shall split the annual costs of parochial school tuition for the minor children. 7. The court retains jurisdiction over the child support and spousal support orders."
On February 11, 1999, appellant Betty Moauro filed an appeal from the trial court's January 19, 1999, Judgment Entry (Case No. 1999CA00046). A Notice of Cross-Appeal was filed by appellee Joseph Moauro on February 18, 1999. This Court, pursuant to an Opinion filed on September 20, 1999, in Case Nos. 1998CA00312, 1998CA00335 and 1999CA00046, held, in part, that the trial court had failed to make findings of fact and conclusions of law in denying appellant's Motion for Shared Parenting as is required by R.C. 3109.04(D)(1)(iii). For such reason, we reversed and remanded the matter back to the trial court "so that the trial court can make the requisite findings of fact and conclusions of law." We further held that since "[n]one of the Judgment Entries filed in this case incorporate the parties' stipulations as to the division of specified property or addressed issues relating to the outstanding mortgage on the marital residence", the trial court had failed to divide all of the parties' marital assets and debts. For such reason, we found that there was no final appealable order with respect to the property division or with respect to spousal support. Thereafter, appellee, on October 22, 1999, filed a motion requesting that the trial court "amend its previous judgment entry" in accordance with this Court's September 20, 1999, Opinion. Pursuant to an "Amendment to Judgment Entry" dated October 22, 1999, the trial court stated as follows in amending its November 18, 1998, Judgment Entry: "1. Plaintiff shall be residential parent of the minor children. The championship schedule shall be that as described in the Plaintiff's Shared Parenting Plan Exhibit 4. The Court based its findings as to this issue on the testimony of Joseph Moauro who testified the Defendant voluntarily left the marital residence with him to care for the five (5) minor children. In addition, both parties have testified that the current living arrangements are in accordance with the Shared Parenting Plan ordered which consists of companionship each Monday and Wednesday from 6:00 P.M. until 8:00 P.M. On the weeks the Defendant does have weekend companionship, the Defendant would have companionship each Tuesday and Thursday from 5:00 P.M. until 8:00 P.M. The Court finds this Shared Parenting Plan in the best interest of the minor children. In addition, it provides for a more stable atmosphere than the Defendant's Shared Parenting Plan where the children would be rotating between the two households on a monthly basis. In addition, the Court amends its entry to reiterate that the child and spousal support shall be in accordance with the previous entry of November 18, 1998, per the child support guideline worksheet based upon the testimony of both parties of their income. All spousal support orders are in accordance with Ohio Revised Code Section 3105.18(A) and is considered after factoring in the relative earning abilities of the Plaintiff and Defendant, their ages, retirement benefits, duration of the marriage, their standards of living, the assets and liabilities of the parties and contribution to education and training, and the time and expense necessary for the spouse seeking support to acquire new skills. It has also been factored in that the parties had made the verbal agreement that the Plaintiff would work full-time until the Defendant received her degree. Plaintiff complied with that agreement. Unfortunately, as the Plaintiff attempted to get his degree, the Defendant left the marital residence while she was employed full-time. In addition, both parties have split any and all personal property. The Plaintiff has been granted the marital residence at 622 Garfield Avenue, SW, Canton, Ohio. The value of the property was stipulated to be $48,000.00. The parties stipulated that the Plaintiff would receive the marital residence and be responsible for the outstanding mortgage in the amount of $32,732.61. In return, the Defendant would keep any balance of her portfolio at Aultman Health Foundation Retirement Savings Plan with the last known balance of $14,687.24 as of June 30, 1998. Finally, both parties will keep any and all vehicles in their individual names."
Thereafter, appellant, on November 19, 1999, filed a Notice of Appeal (Case No. 99CA0364) of the trial court's October 21, 1998, November 19, 1998, January 19, 1999, and October 22, 1999, Judgment Entries. A Notice of Cross Appeal was filed by appellee on November 22, 1999. Appellee appealed from the same Judgment Entries. A second Judgment Entry was filed by the trial court on November 30, 1999. The trial court, in such entry, designated appellee the residential parent of the minor children, divided the parties' personal property, ordered appellant to pay $210.00 per month per child in child support effective January 1, 1999, and ordered appellant to pay appellee spousal support in the amount of $200.00 per month for twenty four months effective January 1, 1999. A Notice of Appeal from the November 30, 1999, Judgment Entry was then filed by appellant on December 29, 1999. It is from the trial court's October 21, 1998, November 19, 1998, January 19, 1999, October 22, 1999, and November 30, 1999, Judgment Entries that appellant prosecutes her appeal, raising the following assignments of error:
 I THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR SHARED PARENTING AND SHARED PARENTING PLAN.
 II THE TRIAL COURT ERRED WHEN IT ORDERED APPELLANT TO PAY CHILD SUPPORT PURSUANT TO DEFENDANT'S EXHIBIT 5 IN ITS OCTOBER 20, [SIC] 1998 JUDGMENT ENTRY.
 III THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY $210.00 PER MONTH PER CHILD FOR CHILD SUPPORT IN ITS NOVEMBER 18, 1998, JANUARY 19, 1999 OCTOBER 22, 1999 AND NOVEMBER 30, 1999 JUDGMENT ENTRIES.
 IV THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY SPOUSAL SUPPORT IN THE AMOUNT OF $250.00 PER MONTH IN ITS OCTOBER 20, [SIC] 1998 JUDGMENT ENTRY AND $200.00 PER MONTH IN ITS NOVEMBER 18, 1998, JANUARY 19, 1999, OCTOBER 22, 1999, AND NOVEMBER 30, 1999 JUDGMENT ENTRIES.
 V THE TRIAL COURT ERRED IN FAILING TO ORDER APPELLEE TO REFINANCE THE MORTGAGE ON THE MARITAL RESIDENCE.
Appellee, with respect to his cross appeal, raises the following assignment of error:
 THE TRIAL COURT ABUSED ITS DISCRETION BY MODIFYING ITS ORIGINAL ORDER OF OCTOBER 20, [SIC] 1998, WITHOUT ANY NEW EVIDENCE OR ANY MOTION BY THE APPELLANT.
For purposes of clarity, we shall first address the argument made by appellee in his cross-appeal.
CROSS-APPEAL, Appellee, in the sole assignment of error in his cross-appeal, contends that the trial court abused its discretion by modifying its October 21, 1998, order without any new evidence or motion by appellant. We disagree. The trial in this matter was held on October 20, 1998. At the conclusion of the trial, the court stated on the record as follows: JUDGE: Alright. The Court's gonna make the following orders . . . I will grant a divorce upon the grounds of incompatibility and I'll approve and adopt the stipulations that the parties have read into the record and acknowledged, uh, uh, to be their agreement, uh, and order them to be incorporated into the final decree prepared and filed, uh, by Mr. Forchione within fourteen days together with incorporating the Court's decision on the contested issues which the Court does decide as follow. With regard to the spousal support the Court's gonna order that the Defendant pay, uh, two hundred and fifty dollars a month for twenty-four months commencing November First as and for spousal support subject to the continuing jurisdiction and standard conditions of death of either party, remarriage or living in a state of concubinage by Obligee. At the end of the twenty-four month period and upon motion of either party the Court will review this order and adjust the same as it is then appropriate. Uh, Plaintiff will be designated the residential parent and the plan of parenting/companionship shall be as described on the Plaintiff's quote shared parenting order, uh, in detail. Uh, Defendant shall pay child support as per the guidelines worksheet in Exhibit Five, uh, of Plaintiff. However, I think, if I understood correctly, the credit for child care or I mean, uh, actually it was insurance wasn't it? Health insurance. Needs to be factored in if that wasn't already factored. MR. FORCHIONE: I think it already was, Your Honor. JUDGE: Alright, I . . . MR. FORCHIONE: I will double check it. JUDGE: I wasn't clear but I want to make sure that that credit's applicable. MR. FORCHIONE: Yep. JUDGE: Uh, fourth, uh, the parties shall equally pay the school tuition for the children. Fifth, the Plaintiff shall pay and hold Defendant harmless on his Discover card and the First of America card. The parties shall remain jointly liable for the Household Finance loan. And the Defendant shall pay and hold Plaintiff harmless on the remaining debts listed in Exhibit Seven. The Court's gonna order each party to pay their own, uh, fees and to equally divide the court costs in this case. Have I omitted any, uh, issue?"
Transcript of Proceedings at 106-107. Thereafter, the trial court, pursuant to an order dated October 21, 1998, ordered appellant to pay $250.00 a month for twenty four months to appellee for spousal support and to pay child support in the amount of $250.00 per child in accordance with appellee's worksheet (Exhibit 5). Appellant also was ordered to remain jointly liable on the Household Finance loan and to pay and hold appellee harmless on all of the other marital debts listed in Exhibit 7, except appellee's Discover card and his First of America card. Subsequently, at the trial court's request, the parties submitted proposed findings of fact and conclusions of law. After reviewing the same, the trial court, pursuant to a Judgment Entry filed on November 19, 1998, reduced child support from $250.00 to $210.00 per month per child and reduced spousal support from $250.00 to $200.00 per month for twenty four months effective January 1, 1999. The trial court also ordered appellee to pay a Beneficial loan in full and to pay the entire Household Finance debt. Appellee now contends that the trial court abused its discretion by modifying its October 21, 1998, Judgment Entry "without any new evidence or any motion by the appellant." The trial court's October 21, 1998, Judgment Entry was not a final, appealable order as is evidenced by the fact that the trial court, in such entry, stated as follows: "Divorce granted upon incompatibility stipulations of the parties are approved and adopted to be incorporated into the final decree prepared and filed . . . w/I 14 days with the court's decision on the contested issues as below." Clearly, at such point in time, no final decree of divorce had been filed. Since the trial court's October 21, 1998, Judgment Entry, therefore, was not a final appealable order, the trial court was free to modify any part of its decision prior to the entry of final judgment. Mason v. Swartz (1991), 76 Ohio App.3d 43, 56. See also Deckerd v. Deckerd (June 24, 1999), Columbiana App. No. 98-CO-59, unreported. Accordingly, appellee's sole assignment of error is, therefore, overruled.
 I
Appellant, in her first assignment of error, contends that the trial court erred in denying appellant's Motion for Shared Parenting and Shared Parenting Plan. Appellant, in her motion, specifically had requested that the Shared Parenting Plan designate the party with physical custody of the parties' minor children at any point in time to be the children's residential parent. As is stated above, appellant filed a Motion for Shared Parenting and a proposed Shared Parenting Plan on September 28, 1998. After the trial in this matter, the trial court, as memorialized in a Judgment Entry filed on October 21, 1998, stated as follows: "Plaintiff [appellee] shall be the residential parent and the plan of parenting/companionship shall be as described on plaintiff's "shared parenting order as filed." By designating appellee the residential parent, the trial court, in essence, rejected appellant's motion for shared parenting since R.C. 3109.04(K)(6) provides that if an order provides for shared parenting, each parent, regardless of where the child is physically located or with whom the child is residing at a particular point in time, is the residential parent. Appellant subsequently appealed the trial court's denial of appellant's Motion for Shared Parenting. Thereafter, this Court, pursuant to an Opinion filed on September 20, 1999, held, in part, as follows: "R.C. 3109.04(D)(I)(iii) provides that if a trial court denies a motion requesting shared parenting "the court shall enter in the record of the case findings of fact and conclusions of law as to the reason for . . . the rejection or denial." The trial court, therefore, should have set forth its reasons for denying appellant's Motion for Shared Parenting."
Accordingly, for such reason, we reversed and remanded this matter to the trial court so that the trial court could make the requisite findings of fact and conclusions of law. Upon remand, the trial court, pursuant to an "Amendment to Judgment Entry" dated October 22, 1999, gave the following explanation for denying appellant's Motion for Shared Parenting and designating appellee as the children's residential parent: "1. Plaintiff shall be residential parent of the minor children. The championship [sic] schedule shall be that as described in the Plaintiff's Shared Parenting Plan Exhibit 4. The Court based its findings as to this issue on the testimony of Joseph Moauro who testified the Defendant voluntarily left the marital residence with him to care for the five (5) minor children. In addition, both parties have testified that the current living arrangements are in accordance with the Shared Parenting Plan ordered which consists of companionship each Monday and Wednesday from 6:00 P.M. until 8:00 P.M. On the weeks the Defendant does have weekend companionship, the Defendant would have companionship each Tuesday and Thursday from 5:00 P.M. until 8:00 P.M. The Court finds this Shared Parenting Plan in the best interest of the minor children. In addition, it provides for a more stable atmosphere than the Defendant's Shared Parenting Plan where the children would be rotating between the two households on a monthly basis."
In a subsequent Judgment Entry that was filed on November 30, 1999, the trial court further stated that it believed that "this plan is in the best interests of the five minor children of the parties in that it most closely follows the pattern described by the testimony of the parties. The Court further notes that the testimony of the parties and the exhibits submitted show that the children are doing very well under this arrangement. The Court believes that this companionship schedule provides for stability for the children in that it eliminates the rotation of the children and their belongings between two separate residences, yet allows for liberal companionship with both parents. The Court further recognizes that this arrangement leaves the primary residence of the minor children at the place where they have lived throughout their lives to date." Upon review of the record in this matter, we find that the trial court has failed to comply with our September 20, 1999, Opinion in that it has failed to "enter in the record of the case findings of fact and conclusions of law" as to its reasons for denying appellant's Motion for Shared Parenting. See R.C. 3109.04(D)(l)(iii). The sole reason given by the trial court for denying appellant's Motion for Shared Parenting was that it was not in the children's best interest to change their residence from month to month. However, since appellant, at the trial in this matter, agreed to amend her proposed Shared Parenting Plan to provide that, in accordance with appellee's proposed Shared Parenting Plan, the children would reside with appellee only, the trial court's stated reason for denying appellant's motion was no longer valid. Appellant agreed to the physical living arrangement of the children as set forth in appellee's proposed shared parenting plan. Appellant did not agree with appellee being designated as the sole legal custodian and residential parent of the children. The trial court still has not addressed the reason or reasons it denied appellant's request to be designated as the residential parent when she has the children and why it denied appellant's request for the parenting plan to be designated as a shared parenting plan. For such reason, this matter is reversed and remanded to the trial court with respect to appellant's first assignment of error. Upon remand and for purposes of this particular appeal, the trial court is directed to address all of the criteria set forth in R.C. 3109.04(F)(2) in explaining why it denied appellant's Motion for Shared Parenting.
 II
Appellant, in her second assignment of error, argues that the trial court erred when it ordered appellant to pay child support pursuant to appellant's Exhibit 5 in its October 21, 1998, Judgment Entry. The trial court, pursuant to its October 21, 1998, Judgment Entry, ordered appellant to pay child support "as per the guidelines worksheet in [appellant's] Exhibit 5." The guidelines worksheet utilized appellant's income while she was employed as a nurse at Aultman Hospital, which was $42,898.03 per year. However, as of the date of trial, appellant had terminated her employment at Aultman Hospital and was employed at Gastroenterology Specialists, Inc. where her salary was $37,040.00 per year. Subsequently, the trial court, sua sponte, issued a second Judgment Entry on November 19, 1998, in which it modified child support and ordered appellant to pay child support in the amount of $210.00 per month per child effective January 1, 1999. See also January 19, 1999, Judgment Entry. The trial court, in arriving at such figure, used a guideline support sheet that was based on appellant's current salary of $37,040.00 per year. Appellant now argues that the trial court erred when it failed to use her $37,040.00 gross earnings amount "in determining her child support obligation in its October 20, [sic] 1998, Judgment Entry." When reviewing matters concerning child support, this court employs an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142 . In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. We find that the trial court abused its discretion in failing to find child support to be $210.00 per month per child in its October 21, 1998, order. As is stated above, while the trial court, in its October 21, 1998 Judgment Entry, utilized appellant's $42, 898.03 salary from Aultman Hospital, at the time of the October 20, 1998, trial in this matter, appellant was no longer employed at Aultman Hospital. Rather, appellant was employed elsewhere as a nurse at a salary of $37,040.00 per year. Appellant testified that her new job allowed her to spend more time with the children, and that appellee supported appellant's decision to change jobs. For such reason, the trial court should have used appellant's $37,040.00 salary in determining her child support obligation in its October 21, 1998, Judgment Entry. The trial court did, as memorialized in its November 19, 1998, and January 19, 1999, Judgment Entries, subsequently order appellant's child support obligation to be $210.00 per month per child after utilizing such figure. However, we find this error to be harmless. The trial court's clear intent was that the October 21, 1998, "order" would have no force and effect unless and until it was incorporated into a formal final decree of divorce. The trial court said the following in its October 21, 1998, entry: "Divorce granted upon incompatibility — stipulations of the parties are approved and adopted to be incorporated into the final decree prepared and filed by Attorney Forchione [appellee's trial counsel] within 14 days with the court's decision on the contested issue as below." Clearly, the trial court changed its mind as to the child support amount prior to the final decree of divorce. As set forth in our discussion of appellee's sole assignment of error on cross-appeal, the trial court can modify its decision prior to the entry of final judgment. We conclude that that is what the trial court did in the case sub judice. The final decree sets forth that child support shall be $210.00 per month per child beginning January 1, 1999. Therefore, we find that the $250.00 per month per child support order of October 21, 1998, has no force and effect. It was never adopted as the trial court's final order and we find that the October 21, 1998, "orders" were only orders of the trial court if they were ultimately adopted by the trial court in its final entry. The only support order that would have been in effect until the January, 1999, order went into effect was any temporary order of support made by the trial court. We find that the October 21, 1998, "order" of the trial court is not a temporary order. We overrule appellant's second assignment of error because we do not find that the October 21, 1998, "order" of the trial court has any force and effect as to child support.
 III
Appellant, in her third assignment of error, asserts that the trial court erred in ordering appellant to pay child support in the amount of $210.00 per month per child in its November 18, 1998, January 19, 1999, October 22, 1999, and November 30, 1999, Judgment Entries. Appellant specifically contends that the trial court erred in failing to find that appellee was voluntarily underemployed and in failing to impute income to appellee in the amount of $10,090.00 (the minimum wage times forty hours per week). According to appellant, "[u]tilizing a minimum wage figure for Appellee and $37,040.00 gross annual income for Mrs. Moauro [appellant] , Appellant's child support obligation should have been $179.37 per month per child" rather than $210.00 per month per child. As is state above, this court applies an abuse of discretion standard in reviewing matters concerning child support. See Booth, supra. Thus, we must determine whether the trial court's decision finding that appellee was not voluntarily underemployed and ordering appellant to pay child support in the amount of $210.00 per month per child is arbitrary, unreasonable or unconscionable. Blakemore, supra. The court in Woloch v. Foster set forth the following test for determining whether a parent is voluntarily underemployed:
The fact that the obligor's income has been reduced as a result of his or her voluntary choice does not necessarily demonstrate voluntary underemployment. The test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned.
Woloch v. Foster (1994), 98 Ohio App.3d 806, 811. At the trial in the case sub judice, appellee testified that he currently was working as a gas station attendant while attending college part-time. Appellee, who was earning $5.35 per hour while working five hours per pay period, anticipated that he would earn $1,500.00 in 1998. Before terminating his employment as a printer to attend college, appellee had earned $35,000.00 per year. However, after appellant completed her nursing degree and began working as a nurse, appellee, in accordance with the parties' agreement, quit his printing job in order to work towards his goal of becoming a teacher. Appellant testified at trial that she agreed with appellee's decision to do so. In addition to working and going to college part-time, appellee testified that he spent a great deal of time caring for the parties' five children, who ranged in age from seven years old to fifteen years old at the time of trial. When questioned about his typical weekday, appellee testified as follows: "A. Well, I usually start my day at six o'clock, sometimes six thirty. And I get Joe to Central Catholic by eight o'clock. The other little ones to St. Pete's by eight oh five.
Q. Do you have to . . . A. And then . . . Q. . . . drive them all? A. Yes, sir. And then I have class at the main campus, Kent State University at eight fifty. Q. And at what time do you get home? A. I usually am home by one fifteen in the afternoon. Q. Okay. A. And then we try to prepare something for supper and then their day ends at two thirty-five at which time I pick them up. Q. At St. Pete's and St., and at Central . . . A. St. Pete's. Well, Joe has football until five twenty at which time I go and pick him up also."
Transcript of Proceedings at 22-23. Based on the foregoing facts, we find that the trial court did not abuse its discretion in declining to find appellee voluntarily underemployed. Such decision, based on the parties' agreement that appellee would quit his job and attend college once appellant completed her nursing degree and the amount of time appellee spends caring for the parties' five children in addition to working and attending college, was not arbitrary, unreasonable or unconscionable. Accordingly, we further find that the trial court did not abuse its discretion when, after declining to impute $10,090.00 in income to appellee for purposes of calculating child support, it ordered appellant to pay $210.00 per month per child in support. Appellant's third assignment of error is, therefore, overruled.
 IV
Appellant, in her fourth assignment of error, challenges the trial court's award of spousal support to appellee. Appellant specifically contends that the trial court erred in ordering appellant to pay spousal support in the amount of $250.00 per month to appellee in its October 21, 1998, Judgment Entry and $200.00 per month in its November 18, 1998, January 19, 1999, October 22, 1999, and November 30, 1999 Judgment Entries. Appellant, in her brief before this Court, has indicated that she has no objection with respect to the trial court's order as to spousal support provided that the assignment of error contained in appellee's cross-appeal is not sustained and appellant is not required to assume more of the marital debts. As is stated above, this Court has overruled the sole assignment contained in appellee's cross-appeal, holding that the trial court did not abuse its discretion by, pursuant to a Judgment Entry filed on November 18, 1998, modifying its October 21, 1998, Judgment Entry. Whereas the October 21, 1998, Judgment Entry ordered appellant to pay specified marital debts, the November 19, 1998, Judgment Entry provided that appellee, rather than appellant, would pay certain of those debts. Accordingly, since appellee's sole assignment of error was overruled by this Court, appellant's fourth assignment of error is moot.
 V
Appellant, in her fifth assignment of error, argues that the trial court erred in failing to order appellee to refinance the mortgage on the marital residence. Pursuant to the trial court's November 30, 1999, Judgment Entry, appellee was awarded the marital residence and ordered to assume the mortgage obligation on the same. Appellant now argues that appellee should have been ordered to refinance the mortgage on the marital residence since "[i]t is inequitable to require Appellant to be responsible for this debt until it is paid in full which will adversely affect her ability to obtain credit in the future." Since a trial court has broad discretion in dividing marital property, a reviewing court will not substitute its judgment for the trial court's unless the trial court has abused its discretion. Bisker v. Bisker (1994), 69 Ohio St.3d 608,609. The identical issue regarding the refinancing of the mortgage on a marital residence was addressed by this Court in Matics v,. Matics (March 4, 1996), Stark App. No. 1995CA00114. The appellant in Matics argued that the trial court should have required the appellee to refinance the existing mortgage on the marital residence since the appellant's ability to purchase another residence was hampered by the fact that the appellant was still legally liable for the same. This Court, in rejecting the appellant's argument, specifically stated as follows: "Appellant has not cited any case law supporting this argument, nor do we know of any. The fact that the parties get divorced after jointly signing a mortgage on real estate does not relieve them of their liability to the mortgage holder. Therefore, the trial court did not abuse its discretion in not ordering appellee to refinance the marital residence."
For the reasons as set forth in Matics, supra., we find that the trial court did not abuse its discretion in not ordering appellee to refinance the martial residence.
Appellant's fifth assignment of error is, therefore, overruled. The judgment of the Stark County Court of Common Pleas is affirmed in part and reversed and remanded in part.
 ___________ Edwards, J.
Gwin, P.J. and Reader, V.J. concurs